May it please the Court, I am Robert Kraft representing Alex Ralston. With me at the Council table is Richard Davies. The Court asked Council to be prepared to discuss the effects, if any, that the Shearing v. Trailer Brothers has on this appeal. Shearing has, there's three points to be made from the Shearing case. First of all, Shearing confirms that in a 905B case, the question of whether a defendant acted reasonably is a question of fact and not subject to a summary judgment dismissal. Secondly, the reversal in Shearing is based upon two cases, the Martinez case and the Thomas case, and both of those cases are quite factually similar to what we have here. Thomas was a case where an experienced longshoreman fell into an unguarded, unprotected hatch opening. Martinez is a case where the experienced longshoreman fell into an unguarded, unprotected ladder opening. And in each of those cases, the District Court dismissed on summary judgment. In this court, the Ninth Circuit reversed and sent it back to a trial. Finally, Shearing is important because in footnote 5, it addresses the question of a dual-capacity defendant and what duty may be owed by a dual-capacity defendant. And there's references to a Fifth Circuit case and a First Circuit case that held that the CINDIA standards are to be applied. There's also reference to the Finetti case, which is a Second Circuit case, which I will discuss in a couple of minutes. But I think the Finetti case and the reasoning behind the Finetti case is definitely applicable to the circumstances of this case. Well, even the Second Circuit's backed off of that. Well, I read the Gravitt case yesterday closely in anticipation of this issue being discussed. And as I read Gravitt, what they're saying is they're saying that what Finetti said was that you simply have to consider, and this is Gravitt speaking, that you have to consider whether the acts were committed in the capacity of vessel owner versus employer. And that's how I read Gravitt's explanation of what Finetti meant. Certainly, Finetti has not been overruled, and the reasoning under the circumstances of this case is directly applicable. And what's important, I think, is when you read the CINDIA case, the language of CINDIA states at pages 166 and 167, I'm going to quote, we held in Marine Terminals versus Burnside Shipping Company that the vessel owes to the stevedore and his longshoremen employees the duty of exercising due care under the circumstances. And the Howlett case, the Marine Terminals case, the CINDIA case all reference the circumstances. The Ninth Circuit cases reference the district court's duty to look at the factual circumstances of the case in determining the duty owed and in determining whether that duty has been breached. CINDIA goes on to state, this duty extends at least to exercising ordinary care, and then it discusses the turnover duty. But the words at least suggest that the turnover duty, the active control duty, and the duty to intervene are the minimum standards, and dependent upon the circumstances of the case, the duty owed may be higher than what is set out in CINDIA. Now, I've been looking at this case for three and a half years, and I have not found a single case where the plaintiff in a 905B action is a 17-year-old high school junior with no vessel experience. Every case that I could find... You see, the difficulty with the argument, at least that you made in your brief, is that it doesn't take any account at all of the dual capacity problem. So it's real easy to say, well, this was a 17-year-old kid, it was a cousin, he didn't know anything at all about boats, and he's put on there, therefore, somebody's liable. But that's painting with two... no pun intended. Sorry, I didn't mean to say that. I don't mean to be funny on this case at all. There's nothing funny about it. That's sweeping with too broad a brush. So it would be helpful to me if you would focus on why a painting contractor would have been liable under the circumstances here. When you say a painting, I guess I'm not clear on the question. Are you asking me to assign... I'm asking you to follow the dual capacity doctrine. And you've got, on the one hand, the vessel as owner of the vessel, and you've got, on the other hand, S.J.E. as vessel owner for S.J.E., and a hypothetical painting contractor, Stevedore, role. Okay. His negligence as vessel owner comes in this respect. First of all, on the turnover duty. These guardrails were taken down on March 14th. Alex Ralston did not come onto the vessel until March 27th. So almost two weeks goes by when the guardrails are down. From March 14th to March 27th, S.J.E. had no employees aboard the vessel. So the taking down of the rails and making this dangerous condition could not have taken place in the capacity as employer. The gravity... Well, here's the question. The rails were down. It was hazardous. Okay. The question is, would a Stevedore, that is a painting contractor, have seen it? Answer, surely so. It's quite obvious. And what would a painting contractor have done about it? Your expert, as I understand it, says, well, pretty simple. Put up some scaffolding or put up some rope barriers. I mean... Well, the Cyndia case and I believe the Hallett case talk about the vessel owner's justifiable expectations that the employer will take care and remedy any unsafe conditions. But, again, under the circumstances of the case where you have a defendant who is wearing two hats, Mr. Hoff had no justifiable expectation that he, in his employer capacity, was going to do anything about the hazard. So the question is... It's a hypothetical independent Stevedore. Otherwise, the dual capacity doctrine has no meaning. You've just collapsed it and said, well, if it's the same guy, it's the same guy. Obviously, the same guy is negligent. He's negligent. Well, the cases are clear that a person in a dual capacity situation can be negligent in both capacities. Of course, can be. And the question is, when he turned over the vessel to Mr. Ralston, was it in a condition that was free of unreasonable hazards? Can you distinguish the Castorina case? Castorina dealt with a professional longshoreman. And my understanding is that in that case, the Fifth Circuit did apply the expert and experienced standard, and they held in that dual capacity case that the syndia duties ought to apply equally. But the plaintiff in Castorina was an experienced longshoreman who the syndia turnover duties, as expressed in syndia, could be applied under the circumstances. Under the circumstances of this case, Mr. Ralston had no experience with which to work around the problems. And Mr. Hoff, as the employer, he had only owned this vessel for three or four years. He was not an experienced painting contractor. So he had no justifiable expectation that the employer would remedy this unsafe condition. And, again, I want to focus on the under the circumstances language and the at least language in syndia, that under the facts of this case, it is not realistic, it is fictional, to assume that Mr. Hoff in his capacity as vessel owner had any expectation that he in his capacity as employer would cure the problem. Well, you know, it's not whether he had the expectation. It's whether the law requires him to be responsible. You say he owned it for three or four years. I think he purchased the vessel in March of 2000. Well, if he'd owned it for 20 years, then he still would not be responsible? Well, I'm not certain how to answer that question. The question is, wearing the two hats, was he at fault in his vessel owner capacity? And was there a reasonable expectation that the independent stevedore, the independent employer, would take measures to remedy the defect? And clearly, in his mind, he's not remedying the defect, he's taking photos of it. So it was clear that there was no expectation. Now, I just want to read, if the court would allow me, I just want to read the quote from Finetti. And I don't believe the court in this case has to choose between the Castorini and the Moorhead case and the Finetti case. I think what the court can do is simply say that under the circumstances of this case, the duty owed is to turn over a vessel in a safe condition that would allow a 17-year-old with this experience to work with reasonable safety. But I want to read from the Finetti case and just ask the court to consider this logic. Quote, a ship owner is, of course, at liberty to refrain from hiring an independent stevedoring contractor. Presumably, it does so to save money. However, that saving is accomplished at the cost of not having an independent expert on board. As myriad cases in this field demonstrate, the presence of the expert independent stevedoring contractor furnishes the ship owner with significant protection in the form of insulation from liability for which its own acts which would otherwise attach. But the ship owner cannot save the premium and still claim the protection. Now, that quote is directly applicable to the circumstances of this case. Yeah, and if we were to go with it, we would be creating a flat circuit split with the first circuit and the fifth. I realize that, and that's the problem. And that's why I say that I don't believe this court has to choose between the first and the fifth and the second circuit. I think that the court can say, can cite the at-least language and can cite the under-the-circumstances language and just say that under the circumstances of this case, it was Hoff's duty as vessel owner to provide a vessel and turn over a vessel that was reasonably safe for a kid with Alex's experience to do his work with reasonable safety. And I don't think you have to choose. And I agree that if you make that finetti choice, we're up to the Supreme Court, and I don't want that to happen. So that's my argument on that. The evidence, as the court has indicated, that a hazard existed, I won't address the evidence supporting the evidence that a hazard existed. I do want to say simply that under the active control duty and under the duty to intervene, I believe there was also sufficient evidence that Mr. Hoff, in his capacity as vessel owner, had the responsibility.  There's a declaration from one of the shipwrights, Roy Hamilton, who says, and I'll read this to you. At all times during my and Peter Newday's work aboard the Odyssey, Peter Newday and I took our instructions from Mr. Hoff in his capacity as vessel owner. Mr. Hoff was at all times in control of the work that was being performed on the vessel, and as vessel owner, had the authority to dictate to Mr. Newday and to me how the work was to be done. Now, it's also clear from the photographs, which are exhibits 303 through 307, that Mr. Hoff was on the scene. He was taking photographs of what Alex was doing. He was taking photographs of the vessel. He had the authority to dictate what was done, how it was done. He could have easily say, I want guardrails, I want stanchions. And that would have been, in his capacity as vessel owner, to make the workplace safe. So I will reserve five and a half minutes and thank you for your time. Mr. Kraft, before you sit down, a while ago, if I understood you correctly, you said that an experienced contractor would have and perhaps should have taken care of this danger problem with scaffolding and other things. So if that's true, what was the turnover duty that you allege the vessel owner had here under those circumstances? To hire an experienced contractor, and since he didn't, that's by the board? Or what are you saying there? I'm saying that he did not in this case, and because he did not, he had no justifiable expectation that an independent contractor would remedy the hazard. Based on the inexperience of the employee of the painting contractor. Correct. And just like the Finetti case says, you can't save the premium and still have the protection too. So it would be a, my term was fiction, but it would be anomalous to allow him to hire two teenagers, pay them $8 an hour to come on and paint the vessel, and then say, well, you can't recover when you've had this catastrophic injury because if he had hired a professional, it would have been made safe. That would be wrong in my opinion. Okay. Thank you. Thank you, Mr. Graff. Good morning, Your Honors. My name is Mark Beard. With me at counsel table is my partner, Ron Beard. We represent the appellee defendant in this action, San Juan Excursions. Your Honors, the district court granted defendants motion because the uncontroverted evidence before the district court and the applicable law supported only one conclusion, and that was that San Juan Excursions met its 905B requirements as defined by the Sandia Doctrine. First, on the motion for summary judgment, plaintiff failed to demonstrate that an expert and experienced painter's helper could, with the exercise of reasonable care, enter, exit, and carry out his duties aboard the Odyssey. Second, there was no evidence in front of the judge that defendant failed to exercise due care to avoid exposing plaintiff to a hazardous condition. The evidence was to the contrary, that San Juan Excursions, through Mr. Hoff, explicitly warned the plaintiff. Well, there's probably a triable issue of fact on that. On the warnings, Your Honor? Sure. I believe, Your Honor, that the record will show that the only person that indicated that he did not hear the warning was Mr. Kehlemeyer. And I think if the court would ‑‑ I've got the cite to Mr. Kehlemeyer's evidentiary record. Well, I mean, there certainly is an argument that just saying I didn't hear it is meaningless because that doesn't necessarily say I was there all the time and would have heard everything that was said. Correct. I mean, I understand that, but assume you've got a triable issue on whether warnings were actually administered. What does that do to you? Well, then that throws us back to the trial, Your Honor. I mean, if the court believes that there's an issue on the warnings and we'd submit that the evidentiary record is clear that there is not, then we would be at trial on that issue. Let me ask another question, if I may. Mr. Hoff gave instructions to the kids to do the wheelhouse. Is there anything in the record to show how close they would have been to the unguarded starboard edge? Your Honor, at the evidentiary record, there's photographs of the wheelhouse at the starboard side under construction at ER. I think it's 302, 304, 305. There's also Mr. Hoff's testimony in the record where he describes how he separated the two cousins for work efficiency, took Alex Ralston into the vessel's wheelhouse, put together a pail of supplies, walked him up the interior stairs of the wheelhouse to the port side of the wheelhouse, told him, here's where you work, and then explicitly told him, don't go on the starboard side. The fact that he had to separate them, it seems to me the record seemed to show the boys fooled around and might need to be separated because of that. Would that sort of raise a possibility that a warning would be insufficient, even if it were heard? Your Honor, I understand what Your Honor is suggesting, and certainly the record does not go that far, and it was not inquired into that depth. It's what Mr. Hoff testified is the boys were working together, and he decided to separate them. And at best, they were talking together and not working as hard as he thought they would. The concept that there should be a different standard for a 17-year-old, we heard from the appellant that Mr. Hoff had the opportunity to dictate what happened aboard the boat, and in fact, San Juan Excursions was entitled under the jurisprudence of this circuit to assume that as an expert and experienced painter's helper, that Mr. Ralston would follow the directions that he was given, and certainly the Congress is also true, is that we do not have a duty, at least under the jurisprudence of the Ninth Circuit, to anticipate that having been told and specifically warned that an experienced and expert painter's helper would disregard that warning and in fact go to the off-limits area. Mr. Beard, let's go back just a moment to the answer that you gave Judge Reimer about the issue of warning of the young man to be on that level. If there was negligence there, wouldn't that have been negligence of the employer as opposed to the vessel? So that doesn't answer our question and send us back to trial, does it? Well, not necessarily, and Your Honor makes a good point, and earlier the Court referred to how the dual-capacity situation is a challenging problem, and Mr. Kraft has indicated how long he's worked on this, and we all have foiled this. Dual-capacity cases are very, very problematic. The construct that the Court has given us and the jurisprudence has given us to deal with it in this circuit is that we look at the dual-capacity in terms of the stevedore longshoreman and then extrapolate down so that when we talk about the active duty requirement, the turnover duty requirement, or the duty to intervene, we do it in the construct of a stevedore longshoreman, an expert and experienced stevedore, an expert and experienced longshoreman. So Alex has already recovered from the employer, which is what creates this mess. Exactly. All right. His claim against. And that is exclusive unless he shows negligence on the part of the vessel owner, qua vessel owner. As vessel owner, not as the. Not as the painting, the hypothetical painting contractor stevedore. So it may well be, Your Honor, that Mr. Raulston did not provide Alex with a safe place to work, but in that regard, that would be his duty as an employer, not as the vessel owner. Mr. Craft has focused and has told us that it's the negligence in the turnover duty that we must look to, which would be separate and apart from that aspect, if I understood what he said, that turnover duty is the issue that we have to deal with. And there was a violation here by the vessel, and it should go back to trial on that basis. The turnover duty, Your Honor, requires a vessel owner, when he turns the vessel over to the stevedore or the repair person at the shipyard, is that the vessel must, the ship and its equipment must be such that an expert or an inexperienced repair person stevedore contractor can carry out their duties with, reasonably carry out their duties without exposing themselves to a hazard. And the case that stands for that proposition in the Ninth Circuit is with Johnson v. Bathelia. And... But Mr. Craft is saying you can't hire an inexperienced contractor as here and save money in doing it and have the same turnover duty as if you had hired the professional stevedore or the painting contractor akin to that. And in urging that, what he suggests then is that we should carve out an exception to the turnover duty. And what it would then require a court or a district court judge then is every time that there is a question about the turnover is to look at the stevedore's qualifications or the contractor's qualifications and see if there is a truly, to basically vet that person. So for example, a case that speaks to point on this is the Bandeen case. And that was a log ship down in Astoria, Oregon, in which they were loading logs on the ship, the longshore rigs that provided for netting and safety cables to be erected around the boat. And in that case, like here, they claimed that it was a failure of the turnover doctrine, a failure of the duty to intervene because the vessel owner didn't recognize that there were not cables and safety nets erected and that he should have stepped in to do that. And this court said, no, that was the duty of the stevedore. Now clearly what Your Honor said, I mean, one would assume that a competent stevedore when they're loading logs on board the boat would say, well, hold it, the rigs requires to have safety nets and cables. But the court, at least in Bandeen, didn't make that distinction. They said, no, it's up to the stevedore to take those safety precautions, not the vessel owner. The two of you, of course, are the experts in this area, but I had been under the general impression that cases where the turnover duty has been breached have been ones in which the danger, the risk is one that's known to the vessel owner, should have been known to the vessel owner, but wasn't apparent, so that you've got, you know, whatever, explosives someplace or something that could blow up that the vessel owner doesn't tell someone about, or you've got a hatch that's got a ladder that goes nowhere. Unobvious hazards. I may be wrong on that. Your Honor, first of all, I wouldn't necessarily claim to be an expert in this, but it's certainly well-versed now. I don't think you are wrong, Your Honor. The turnover duties speak not only to that, but you also see them where there's ship's equipment, a winch's mouth functioning, and that the vessel owner knew about it and didn't point it out to the stevedore, so that when the stevedore and the longshore gang came aboard the boat and started using the winch, they weren't prepared for it when it slipped and dropped. I realize that the vessel owner can certainly be liable on the turnover duty when the hazard isn't obvious. I mean, you can't be liable for duty to warn if it's obvious, but I think you can be on the turnover duty. So where's the line drawn? Well, in this instance, because the hazard was so obvious that, for instance, Alex's cousin, Matt Ralston, testified in the record that he saw that the railing were absent as he walked down to the vessel. There's a picture in the record that the appellant referred to, an ER like 303 or 304 that shows the appellant with his eyes literally at eye level where the railing are absent. We know that Hoth told him to stay away. We know that Newday told him to stay away. We know that Newday overheard Hoth telling him to stay away, and we knew that his cousin, Matt Ralston, knew that they were told to stay away. So in that instance, what we have here is just the far end of the spectrum, where it's a very, very, very obvious condition that a person has been warned about. It would be the same thing if he was told, don't go down in the engine room. They're working on the engine. Stay out of the engine room. And the worker went down in the engine room, disobeyed the order, went down into the engine room and was then injured. When a vessel owner recognizes the hazard, points it out to the stevedore, points it out to the contractor, in this instance points it out to his worker and specifically tells him, don't do that. Don't go there. It's dangerous. They've met their turnover duty. And at least based on that analysis, well, we've covered, we've talked about the plaintiff was what the evidence is, what the district court had in front of it. And at times when you discuss this and we're writing the briefs, that escapes us, but what this was at the conclusion of the discovery, we challenged plaintiff's evidence. And the burden that the plaintiff had after we challenged their evidence was to come forward not with theories or conjecture, but at least under the Supreme Court's doctrine in Celtics, they had to come forth with substantial evidence to support elements of their claim. And because they failed to come forth with that substantial evidence, that's why the judge granted the motion for summary judgment for us. Let me ask you a question about relief under 905B. The Fifth Circuit found an issue of material fact in New York Associated Painting Services as to whether sandblasting and painting were repair services precluded from relief under 905B. How is this case appropriate for summary judgment on this issue? I believe, Your Honor, that as I recall, New versus that case there, it was referred to by this circuit in the Hanes versus Fishing Company of Alaska case. And what – and that case involved a person – the challenge by the defendant was Hanes was a repairman, and whether or not he was rightfully precluded from bringing a 905B lawsuit as a repairman. He was hired to do repair work, and he was also hired to do maintenance work. And, well, in rendering its decision, the Ninth Circuit referred to the new case. And as I recall the court's decision, it said that there would be – the court could envision some rare circumstances supported by affidavit where sandblasting and painting would not be considered repair-type activities. And that's what my recollection of the new case is, Your Honor, is that it's not – it's certainly distinguishable for what we have here. And that brought us to the – you know, our alternate means of affirmance, which we claimed and that Judge Burgess didn't get to at the trial level, is that is that the plaintiff under the code is defined as a repair person, as a painter's helper. And you turn to the specific CFRs that he, first of all, claims against us. He seeks and obtains employee status under the CFRs. And, therefore, having filed that claim, he's able to recover under the Longshore Act against San Juan excursions and receive the Longshore and Harbor Workers' Comp benefits. Our argument is that if you claim the benefits of the CFRs, then you don't get to pick and choose which one of those long-showing CFRs pertain to you. And Section 29 of the CFR – I mean, Section 1915.4J of the CFRs defines ship repair and ship repairing as meaning any repair of a vessel including but not restricted to alterations, conversions, installation, cleaning, painting, and maintenance work. We don't have an issue of fact as the plaintiff was doing painting, prep work, wiping down the sides of the boat. He falls, as such, he falls at least under the act, the CFRs, he falls under the definition of a repair person. He can't argue, well, it doesn't apply to me here, and then turn around and say, but it applies to me when I want to receive benefits under the act. And because he qualifies as a repairman under Section 1915.4J, we submit that he was a repair person and, as a repair person, is precluded from maintaining his 905B action. And, in fact, Your Honor, that brings us full circle back to the problem that the court faces and the fact-finders face when they deal with these dual-capacity type cases. And when Congress amended the LHWCAs in 1984 to preclude repairmen from bringing actions like this, there's no legislative history on it, but certainly they must have had in mind this type of problem we face right here, where the vessel owner employs someone to carry out repairs, whether it's sandblasting or whether it's scraping down with a hand scraper and electric sand at the side of the boat, and then that employee gets hurt and turns around and sues the vessel under 905B. It doesn't make sense, and briefly, on the duty to intervene, we'd like to make one point, and that is we recognize that this was a hazardous condition, but the duty to intervene, as set forth in Bejerrison and the Sherling case, is a conjunctive test. It requires you not only to know about the hazardous condition, but that the vessel owner must know that, notwithstanding the warnings or this hazardous condition, that the person is going to go into there. There's nothing in the evidentiary record that shows that Hoff, Kielmeier, Newday, Alex's cousin, knew that Alex had gone into the off-limit area. They can't meet the substantial evidence to prove, to make the case on the case of intervention, so we'd ask that the district court be affirmed. Thank you. Thank you.  Thank you, Your Honor. First, addressing the evidence on the warning. Mr. Kielmeier, the painter, testified that it was his understanding at all times that Alex and Matt Ralston were to paint or to prep both sides of the vessel, including the area of the upper walkway. I'll ask Mr. Davies to hold up a photo, which is Exhibit 307. And this is the wheelhouse here. Alex Ralston testified that he remembered, although his memory is very poor, he testified that he remembers standing under the wheelhouse, looking at the overhang and thinking, this area needs to be painted. Now, additionally, there are five photographs taken by Mr. Hoff. This is Mr. Ralston in the yellow sweater. Taken at different locations. And he's working on the starboard overhang, the exact area from where he fell. Now, if, in fact, the warning was to stay away from this area, why did Mr. Hoff take five separate photos from five different positions telling him not to work there? Now, obviously, if he's there, you can also see the guardrails laying forward of the house, which are a clear trip hazard. Now, the court asked about open and obvious. Both in Martinez and Thomas, the unprotected openings were obvious, and I've listed a number of cases in the brief which say that the turnover duty applies to open and obvious conditions. And if you look at footnote 22 from the Cyndia case, it talks about assumption of risk not being a defense, and that applies directly to this case. Judge Beam appeared to indicate that I limited the claim to the turnover duty in this appeal. I do not. I believe the active control duty and the duty to intervene were also breached in this case. And addressing Mr. Beard's comments about no substantial evidence, the duty to intervene applies when the defendant, as vessel owner, is aware that as a result of improvident judgment, the workers are not going to avoid the hazard. Now, clearly, if he had to warn this 17-year-old ten times to get away from the hazard and to stay away from the hazard, he should have known that at least an issue of fact exists, that he did not feel that Mr. Ralston was going to be able to avoid the hazard. The evidence regarding the warnings is evidence in and of itself of potentially improvident judgment by the worker to get near the starboard rail. And additionally, he's taking photographs of him working in the area of the hazard. So it's clear that he knew that Alex was working on that side of the vessel. The pictures show it. I just want to go back to the question Judge Reimer asked about the Second Circuit and the Fifth Circuit and the dispute between circuits. The legislative history that I've read in the cases is clear that in enacting 905B, the Congress did not set forth the standards to be applied to vessel owners in 905B cases and left that to the judicial process. Now, 35 years after the amendment, the courts have finally come upon a case where the worker who is bringing the 905B claim is not an expert and experienced worker. Through the judicial process, we ask this court to apply a standard that is meaningful with response to the facts and circumstances of this case. Let me ask you something on that. If, in fact, there had been an independent painting contractor and the independent painting contractor had done exactly the same thing, would you be making the same argument or would you say, well, that's the independent painting contractor's problem? Well, it would be a much weaker argument. I can see that. But it would be weaker. But that's not the facts of this case. Yeah, but this kid was a junior in high school. Yeah, I know. I understand that. But if that would be the painting contractor's problem, that is the employer's problem for hiring somebody who is young or inexperienced or both, then if you change the – if you make the duty of the vessel owner or qua vessel owner different because that occurred, aren't you simply collapsing the dual capacity doctrine? I don't believe so because I believe as vessel owner, his responsibility was to provide a vessel that was reasonably safe for this person, given his knowledge and experience under these circumstances. Given the employer's knowledge. That's the problem. That's the problem. You see, you're making the vessel owner the employer at that point, aren't you? I mean, this is all mystical. I understand that. But, I mean, we're put into mystical land. Well, there's no doubt that the vessel owner has the duty. And the duty is to provide the vessel in a condition that is safe. All the cases talk about an expert and experienced stevedore. We don't have that in this case. And why should the standard that applies to a 40-year-old longshoreman or a professional stevedoring service apply to this situation in the Port Angeles Marina with two kids on the boat? You see, my problem is that if that's so, it would always be true when the vessel owner doesn't have an independent contractor. So you have just eliminated the dual capacity doctrine. No, I don't believe that's true. I think where you have the dual capacity situation, you have to look at what is the experience and the expertise of the employees and the employee contractor that is aboard the vessel. And I believe that the problems that you see and that I see the same problems can be limited by a discussion in the opinion regarding the circumstances of this case. And it can be confined to the circumstances of this case because we know these cases don't come along. Thank you for your time. Okay, thank you, Mr. Kraft. Thank you, Mr. Beard, for your argument. The matter just argued will be submitted.
judges: Nelson, Rymer, Beam